## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

**Rudy Stanko,**

      Petitioner,

v.

**Ricardo Rios,**
**Michael Nalley,**
**Harley Lappin,**

      Respondents.

**Civil No. 08-3102 (JNE/JJG)**

**REPORT**
**AND**
**RECOMMENDATION**

---

JEANNE J. GRAHAM, United States Magistrate Judge

      This matter comes to the undersigned on a petition for a writ of habeas corpus (Doc. No. 1). Petitioner Rudy Stanko, currently incarcerated at the federal prison in Waseca, is proceeding pro se. The respondents, various correctional officials with the federal Bureau of Prisons, are represented by Tricia A. Tingle, Assistant U.S. Attorney. This matter is referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(a).

      Mr. Stanko (Stanko) contends that prison officials disciplined him, without lawful proof, in a hearing that violated due process. In this hearing, Stanko received sanctions that included the loss of several days' good time credit, thereby lengthening the duration of his imprisonment. He challenges the evidence that led to the discipline, the hearing itself, and the ensuing sanction. The respondents counter that the discipline was lawful and appropriate, and thus Stanko has no cause for relief here.

## I.    BACKGROUND

During the events relevant to this litigation, Stanko was incarcerated at the federal prison camp in Duluth.  He mailed a letter to his mother on February 12, 2008.  Prison officials opened and copied the letter before it was mailed.  They found that, in the letter, Stanko was asking his mother to send $100 to another inmate, as an ante for a poker game.  Prison officials resealed the letter and returned it to the mail.  (Exh. 1.)[1]

The prison received a money order for $100 from Stanko's mother on March 3, 2008, with the direction that the money be put in the other inmate's account.  The next day, prison officials gave Stanko notice of disciplinary violations, for gambling and giving money to another inmate.  (*Id.*)  Prison officials scheduled a disciplinary hearing for March 18, 2008.  (Exh. 2 at 3-4.)

After receiving an advisory of his hearing rights on March 6, 2008, Stanko made several requests to prison officials through a kite on March 8, 2008.  He asked that a jailhouse lawyer—another inmate—represent him at the upcoming hearing.  He also requested two witnesses:  the mailroom employee who opened the February 12 letter, and the inmate who was supposed to receive the money.  (Exh. 3.)

At the hearing, the disciplinary officer advised Stanko that the inmate was transferred to another prison, and when asked to comment about the incident, that inmate refused to make a statement.  The officer also disallowed testimony from the mailroom employee, ruling that the employee's conduct when opening the letter was irrelevant.  The officer did not allow Stanko to be represented by the jailhouse lawyer, and appointed a prison official to represent him instead. (Exh. 2 at 4.)

---

[1]      Exhibits are cited in an appendix at the end of this report and recommendation.

The officer then considered the evidence, which included the February 12 letter and the incoming money order, and found that Stanko committed the offenses.  Stanko received fifteen days in disciplinary segregation; lost fourteen days of vested good time credit and another fifteen days' non-vested good time credit; lost eight months of commissary privileges and three months of telephone and visitation privileges; and was recommended for disciplinary transfer for another prison.  (Exh. 4.)

Stanko appealed this result on various grounds, beginning with an appeal to the regional director of the Bureau of Prisons (BOP) on May 2, 2008.  The regional director denied the appeal on June 2, 2006, and Stanko proceeded to the next level of appeal, through a filing to the Central Office of the BOP on June 19, 2008.  (Exh. 2 at 7.)  Stanko filed his petition for a writ of habeas corpus on June 25, 2008.  The Central Office denied the appeal, and rejected further relief, by a decision on July 24, 2008.  (Exh. 5.)

## II.     ANALYSIS

### A.     Exhaustion

The respondents first argue that Stanko has not sufficiently exhausted his administrative remedies, and therefore, his petition should be dismissed.

Where a federal prisoner brings a petition for a writ of habeas corpus under 28 U.S.C. § 2241, courts usually require the prisoner to exhaust administrative remedies before considering the petition on its merits.  This rule is judicially created, and it is driven by prudential concerns such as efficiency and respect for prison administration.  *Lueth v. Beach*, 498 F.3d 795, 797 (8th Cir. 2007); *see also Gonzalez v. O'Connell*, 355 F.3d 1010, 1017 (7th Cir. 2004) (discussing the purposes served by the doctrine of exhaustion); *Moscato v. Bureau of Prisons*, 98 F.3d 757, 761-62 (3d Cir. 1996) (same).

Because this rule of exhaustion is judicially created, it does not affect the jurisdiction of the court. A failure to exhaust, therefore, does not prevent a court from deciding the petition on its merits. *Lueth*, 498 F.3d at 797. And where a petition is dismissed for failure to exhaust, the remedy is dismissal without prejudice. For this reason, a prisoner might complete administrative remedies and, upon exhaustion, may potentially refile the petition. *See United States v. Chappel*, 208 F.3d 1069, 1069 (8th Cir. 2000); *Adkins v. Bureau of Prisons*, 69 Fed.Appx. 341, 341 (8th Cir. 2003) (per curiam).

The record shows that, at the time Stanko filed his petition, the Central Office of the BOP had not decided his appeal. As a result, Stanko had not exhausted his administrative remedies at the time he filed his petition, and the petition may be dismissed for this reason. But the Central Office ruled on the appeal on July 24, 2008.

This Court will assume strictly for the sake of argument that, if the petition is dismissed without prejudice, Stanko will diligently refile his petition. Under these circumstances, dismissal only works delay and decreases judicial efficiency. This Court thinks it appropriate, therefore, to consider the petition on its merits.

**B.      The Exclusionary Rule**

In his petition, Stanko devotes substantial argument to whether prison officials illegally opened his February 12 letter. Because that letter was illegally opened, Stanko argues, both that letter and ensuing evidence should not have been admitted at the disciplinary hearing. Although the respondents do not address this position, it requires careful scrutiny here.

What Stanko asks, in effect, is that the exclusionary rule be applied in prison disciplinary hearings. Put another way, he asserts that if evidence is taken in violation of the Constitution or

other federal laws or regulations, then that evidence and any evidence that flows from it should not have been admitted at the disciplinary hearing.

The exclusionary rule, a judicially created rule, was developed as a remedy for Fourth Amendment violations by law enforcement.  It provides that, if officers obtain evidence through an illegal search or seizure, then in a criminal prosecution, that evidence cannot be admitted at trial.  This rule, however, has "never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons."  *Stone v. Powell*, 428 U.S. 465, 486 (1976).

In its decision in *Pennsylvania Board of Probation & Parole v. Scott*, the U.S. Supreme Court considered whether the exclusionary rule should apply in parole revocation hearings. 524 U.S. 357 (1998) (5-4 decision).  It opened its analysis by noting that it had "repeatedly declined" to apply the rule in proceedings other than criminal trials.  *See id.* at 363.  The Court ultimately decided that the exclusionary rule did not apply to parole revocation hearings.  *Id.* at 364.

In support of this result, the Court outlined several factors.  In part, it noted the informal nature of parole revocation proceedings and expressed concern that the exclusionary rule would impose undue administrative burdens on parole officials.  *Id.* at 364-67.  It added that parole is incident to imprisonment, and for this reason, the interest in protecting the public from convicted felons strongly militates against the exclusionary rule in that context.  *Id.* at 365.

This reasoning has equal or greater force in prison disciplinary proceedings.  Like parole revocation proceedings, the disciplinary hearing is a less formal, administrative procedure.  And if the exclusionary rule applied, it would substantially increase the complexity of disciplinary proceedings, imposing significant costs and restraints on prison officials.  In these circumstances,

and in accordance with the reasoning in *Scott*, the exclusionary rule cannot be applied to prison disciplinary proceedings.

This outcome means that it is unnecessary to reach many of the issues Stanko presents in his petition. He claims that, when prison officials opened the February 12 letter, they violated his rights under the First, Fourth, Fifth, and Ninth Amendments, and various prison regulations and policies. Notwithstanding this multitude of legal issues, and assuming there is any violation, the remedy is not exclusion of evidence at the disciplinary hearing. There is no need to consider, therefore, whether the February 2 letter was illegally seized or opened.

**C.     Due Process**

Stanko also argues that, throughout the disciplinary proceedings, prison officials violated due process on several occasions.

The analysis may be generally framed consistent with the U.S. Supreme Court decision in *Wolff v. McDonnell*. 418 U.S. 539 (1974). The Court ruled that, for disciplinary proceedings to comport with due process, prison officials must satisfy five general requirements:

(1)     the prisoner must receive at least twenty-four hours' advance written notice of the charges;

(2)     the prisoner must be allowed to call witnesses, except where the security or good order of the prison is jeopardized;

(3)     if the charges are complex or the prisoner is illiterate, the prisoner is entitled to assistance from prison staff or another suitable representative;

(4)     the prisoner must receive a written report of the decision that recites the evidence for discipline and the reason for sanctions; and

(5)     the decisionmaker must be impartial.

*Id.* at 564-70. Stanko raises issues that implicate all these requirements except the last, that the decisionmaker be impartial.

Assuming that a violation is shown, it is also appropriate to consider whether the prisoner suffers any prejudice. If there is no indication that an error would have altered the result of the disciplinary proceedings, then the prisoner suffers no prejudice and there is no violation of due process. *Griffin-Bey v. Bowersox*, 978 F.2d 455, 456 (8th Cir. 1992) (per curiam).

      **1.**      **Notice**

          **a.**      **Due Process**

Stanko argues, in part, that prison officials failed to give him twenty-four hours' written notice of the charges before the hearing. The respondents counter that Stanko received adequate notice, or in the alternative, that Stanko waived any defects as to notice.

Stanko first received notice when an investigating officer read an incident report to him on March 4, 2008. (Exh. 2 at 2.) That report lists two offenses, gambling and "[g]iving money to . . . any person . . . for any . . . illegal or prohibited purposes." A separate portion of the report assigns codes to these offenses. The report shows two codes, 219 and 324, but the code 219 was struck through and a code 217 was written beneath it. (Exh. 1.) According to a prison policy, code 219 is assigned to the money offense and code 324 to the gambling offense. (Exh. 6 at 8, 11.)

Two days later, Stanko appeared before another prison official for an initial hearing. At the hearing, the officer determined that there were grounds for the charges in the incident report, and scheduled the matter for a disciplinary hearing. (Exh. 2 at 3.) Stanko also received a written notice of that hearing. It did not name any particular offenses, and only code 217 was written on it. (Exh. 7.)

The hearing took place as scheduled on March 18, 2008.  In an ensuing report on March 24, 2008, the hearing officer summarized the charges for gambling and giving money to another, consistent with the original incident report.  But elsewhere the report, the hearing officer noted that one charge was reduced to a lower-level offense.  (Exh. 1.)  The coding shows the charge for giving money to another "for prohibited purposes" was reduced to "[g]iving money [to] . . . another inmate . . . without staff authorization."  (Exh. 6 at 11.)

The hearing officer issued an amended report on May 29, 2008.  This time, the hearing officer discussed the reduced charge:

> [I] advised the inmate that [I] was changing the charge from a 217 (giving money to, or receiving money from, any person for the purpose of introducing contraband) to a 324 (gambling).  [Stanko] was informed that the hearing would be postponed until the next available date . . .  [Stanko] informed [me] that he did not want to wait, let's do the hearing now.

(Exh. 8 at 2.)  The remainder of the report, however, was not altered.

So even though the hearing officer evidently stated that the charge for giving money to another "for prohibited purposes" was reduced to gambling, the rest of the report still showed the charge for giving money to another "for prohibited purposes" was reduced to giving money to another "without staff permission."  (Exh. 6 at 11.)  The gambling charge remained and Stanko was sanctioned for that offense as well.  (Exh. 8 at 3.)

To sum up, the record reveals several irregularities in how and when Stanko received notice of the charges against him.  Given the extent of these errors, this Court will not consider whether Stanko waived his right to notice.

The analysis, instead, should hinge on the question of prejudice.  The best guidance here comes from the Eighth Circuit decision in *Holt v. Caspari*.  961 F.2d 1370 (8th Cir. 1992).  In this case, after a prisoner received notice of charges, prison officials reduced the charges to less

severe offenses.  Notwithstanding the different charges, the court reasoned that the prisoner still had notice about the information relevant to his defense, and thus there was no violation of due process.  *Id.* at 1373.

The reasoning of the *Holt* court is essentially founded on an assessment of prejudice.  Its decision recognized that, so long as the original charges identified the substance of the offense and allowed the prisoner to present an informed defense, the prisoner suffers no prejudice.

The same principles are equally persuasive here.  The charges were based on allegations that Stanko was gambling and attempting to give money to another prisoner.  Though there were some formal errors in how these charges were coded, Stanko had ample notice of the underlying allegations and the nature of his offenses, several days before the hearing.  As a result, the errors of prison officials caused no prejudice and there was no violation of due process.

### b.       Other Regulatory Violations

Stanko raises a few other arguments about the sufficiency of notice, alleging regulatory violations by prison officials.  In part, he contends that they violated 28 C.F.R. § 541.14(b)(2) by failing to provide relevant information about the incident; and he contends that they violated 28 C.F.R. § 541.15(a) by not giving him notice of the charges within twenty-four hours *after* he committed the alleged offense.

28 C.F.R. § 541.14(b)(2) controls how prison staff investigates inmate offenses, including what information the inmate receives during the investigation.  For instance, it requires that the inmate receive a copy of the incident report before the inmate is asked to make a statement about the charges.  It also requires the investigating officer to inform the inmate about his rights during the investigation.  If a staff representative is appointed for the inmate, then that representative is

entitled to "a copy of the investigation and other relevant materials[.]"  However, contrary to what Stanko argues, the regulation does not require prison officials to supply other information.

This Court will nevertheless assume, solely for the sake of argument, that prison officials may have violated this regulation when investigating the charges.  Such a violation, by itself, is not cause for relief.  The regulatory violation must rise to a violation of due process, infringing the requirements set out in *Wolff*.  *Von Kahl v. Brennan*, 855 F.Supp. 1413, 1419-20 (M.D.Pa. 1994).  If the alleged regulatory violations result in no prejudice, then there is no violation of due process and no cause for relief.  *Id.*; *Moles v. Holt*, 221 Fed.Appx. 92, 95-96 (3d Cir. 2007).

As discussed beforehand, Stanko knew the factual basis for the charges against him, and he had a meaningful opportunity to prepare a defense.  There is no indication that prison officials withheld relevant evidence or, had Stanko received additional information, that the outcome of the disciplinary hearing would have been different.  Assuming there was a violation of § 541.14, the violation caused no prejudice to Stanko, and thus the violation does not give him cause for relief.

The other regulation, 28 C.F.R. § 541.15(a), provides,

> Staff shall give each inmate charged with violating a [BOP] rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident.

The record here indicates that, as early as the February 12 letter, prison officials had knowledge about Stanko's offenses.  Moreover, after the money order was delivered, prison officials may have taken slightly longer than a day to inform Stanko about the charges.

Even if prison officials took over twenty-four hours to advise Stanko about the charges, § 541.15(a) does not require notice within this period.  The regulation only provides that notice "ordinarily" shall be during this time, which indicates notice during this period is not mandatory.

*Sinde v. Gerlinski*, 252 F.Supp.2d 144, 149 (M.D.Pa. 2003); *Barner v. Williamson*, 233 Fed. Appx. 197, 199 (3d Cir. 2007).  And due process only requires that a prisoner receive notice of charges twenty-four hours *before* the disciplinary hearing.  *Cf. Homen v. Hasty*, 229 F.Supp.2d 290, 296 (S.D.N.Y. 2002) (finding no concerns where prisoner received notice about charges more than four months after an incident).  For these reasons, § 514.15 also does not grant Stanko relief here.

### 2.      Right to Witnesses

As mentioned at the outset, due process grants a prisoner a limited right to call witnesses in his defense.  Stanko argues that prison officials violated this right by rejecting his requests to call the mailroom employee or the other inmate involved in the poker game.

Notwithstanding this right, prison officials have discretion to refuse witnesses where their testimony is irrelevant, unnecessary, or creates a hazard to correctional safety or goals.  Because of the breadth of this discretion, challenges regarding witnesses are rarely successful.  *Hudson v. Hedgepeth*, 92 F.3d 748, 752 (8th Cir. 1996).

Though the record does not explain why Stanko wanted to call the mailroom employee, it is possible to infer two theories:  either that this employee committed misconduct by opening the February 12 letter, or that the February 12 letter was somehow fabricated.  But where charges are based on a mail offense, and the prisoner has access to the incriminating mail itself, the conduct of a mailroom employee is generally irrelevant to the charges.  *Schenck v. Edwards*, 921 F.Supp. 679, 681 (E.D.Wash. 1996).  And if the employee were required to testify, such involvement has the potential to undermine correctional order and safety.

In these circumstances, the hearing officer had cause to bar testimony from the mailroom employee.  The decision was an appropriate exercise of discretion, and it did not violate Stanko's right to call witnesses.

The other witness was the inmate allegedly involved in the poker game.  After that inmate was transferred to another prison, prison officials asked him about the charges against Stanko, but the inmate refused to make a statement or testify.  (Exh. 9.)  Because the inmate was not talking in any event, his testimony cannot affect the outcome of the disciplinary hearing.  Exclusion of this witness does not prejudice Stanko, and so this decision does not violate due process.

One other issue may be briefly addressed at this point.  According to Stanko, the hearing officer initially rejected testimony from the other inmate.  Toward the end of the hearing, after the hearing officer found that Stanko committed the offenses, he then informed Stanko that the other inmate had actually refused to testify.  Stanko argues he should have been informed about this fact before the hearing officer made his decision.  But this argument is immaterial because the inmate offers no information that might have affected the outcome of the hearing.

### 3.   Representation

Stanko also argues that he was denied his chosen representative at the motion hearing.  He asserts that he has the right to a jailhouse lawyer or another form of effective representation, and that the staff representative appointed for him was ineffective.  So in addition to due process, Stanko also implies that he has other rights to counsel under the Fifth and Sixth Amendments.

To briefly review the underlying facts, at the initial hearing on March 6, Stanko refused assistance from a staff representative.  (Exh. 2 at 3; Exh. 7.)  But at the disciplinary hearing on March 18, Stanko did not waive his right to a staff representative, and one was appointed.  This

representative did not take particular action on Stanko's behalf during the hearing, except to say that Stanko was advised of his rights.  (Exh. 4 at 1.)

Regarding due process, the rule is that unless an inmate is illiterate or the proceedings are complex, a prisoner has no right to representation at a disciplinary hearing.  *See, e.g., Hudson v. Hedgepeth*, 92 F.3d 748, 751 (8th Cir. 1996); *Kulow v. Nix*, 28 F.3d 855, 857-58 (8th Cir. 1994).  Stanko is literate—he has drafted and filed several papers in support of his current petition—and the charges in the disciplinary proceeding were not complex.  For these reasons, due process did not require that any representation be appointed for Stanko at the disciplinary hearing.

Regarding the rights to counsel under the Fifth and Sixth Amendments, these rights only attach in a criminal prosecution.  These amendments, therefore, do not confer a right to counsel in prison disciplinary hearings.  *United States v. Gouveia*, 467 U.S. 180, 192-93 (1984); *Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976).  Because Stanko has no right to counsel, or to any other representation, he cannot challenge the sufficiency of his representation either.

### 4.        Sufficiency of the Evidence

Stanko challenges whether there was enough evidence to determine that he committed the offenses.  This position is derived from his prior argument that, because prison officials illegally obtained evidence against him, that evidence should have been suppressed.  Because this Court previously decided that the exclusionary rule does not apply, all the evidence before the hearing officer can be considered here.

The findings of a hearing officer do not violate due process so long as those findings are supported by "some evidence."  Under this standard, a reviewing court need not weigh any of the evidence that was before the hearing officer.  There need only be enough evidentiary support to

show that the findings of the hearing officer were not arbitrary. *Espinoza v. Peterson*, 283 F.3d 949, 952 (8th Cir. 2002); *Hrbek v. Nix*, 12 F.3d 777, 781 (8th Cir. 1993).

Where prison officials intercept an inmate's mail, and the mail shows an illegal transfer of funds between inmates, there is enough evidence to impose disciplinary sanctions. *Hrbek*, 12 F.3d at 778-79, 781; *Griffin-Bey v. Bowersox*, 978 F.2d 455, 456 (8th Cir. 1992) (per curiam). Between the February 12 letter and the incoming money order, there is some evidence to show that Stanko was gambling and transferring money to other inmates. The findings of the hearing officer, therefore, do not violate due process.

Though due process only requires that Stanko receive a written statement of findings by the hearing officer, Stanko also contends that he has a right to an audio recording or transcript of the disciplinary hearing. No such right is recognized and this argument is without merit. *Ruiz v. Estelle*, 679 F.2d 1115, 1155 (5th Cir. 1982), *modified on other grounds*, 688 F.2d 266 (5th Cir. 1982); *accord, Cardenas v. Ray*, 176 Fed.Appx. 737, 739 (9th Cir. 2006); *Diaz v. McGuire*, 154 Fed.Appx. 81, 85 (10th Cir. 2005).

### D.     Sanctions

Stanko also asserts arguments that challenge the sanctions that were imposed. One is that the sanctions were either disproportional or unrelated to the underlying offenses, and as a result, the sanctions violate his constitutional, statutory, and regulatory rights. Stanko does not specify, however, any particular legal basis for this argument.

Prison officials have discretion to impose disciplinary sanctions, and unless the exercise of that discretion is arbitrary or unreasonable, the sanctions must be upheld. *Glouser v. Parratt*, 605 F.2d 419, 420 (8th Cir. 1979) (per curiam). The sanctions against Stanko were not arbitrary

or unreasonable, and with due regard for the discretion of prison officials, there is no reason to disturb those sanctions here.

Stanko also contends that sanctions must somehow be related to the underlying offenses. Because the charges involved the mail, he suggests, the sanctions may affect mail privileges but not other privileges, such as commissary or visitation privileges. This argument lacks any legal support. And as a practical matter, to maintain order in prisons, prison officials may impose any reasonable sanctions that discourage misconduct. The threat of lost privileges, even if unrelated to an offense, is a reasonable way to encourage prisoners to follow prison rules.

In another argument, Stanko asserts that the disciplinary sanctions are an unconstitutional bill of attainder. Such a bill occurs where Congress, through legislation, imposes punishments upon a particular person or group without trial. *United States v. Van Horn*, 798 F.2d 1166, 1168 (8th Cir. 1986). This argument simply cannot be applied to the current circumstances, and it is wholly without merit.

Stanko's remaining arguments raise various questions about his loss of privileges or the conditions of his confinement. As these issues do not affect the fact or duration of confinement, they are not properly asserted through a petition for a writ of habeas corpus. *Lutz v. Hemingway*, 476 F.Supp.2d 715, 718-19 (E.D.Mich. 2007); *see also Hill v. McDonough*, 547 U.S. 573, 579 (2006) (stating that habeas petitions are used to challenge the fact or duration of confinement); *cf. Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam) (holding that a state prisoner cannot challenge conditions of confinement through a habeas petition).

## III.    CONCLUSION

Stanko argues that, when prison officials opened his mail and found alleged evidence of misconduct, they did so illegally and this evidence must be suppressed in an ensuing disciplinary

hearing.  But the exclusionary rule does not apply to prison disciplinary hearings, and therefore, this evidence was properly received.  The disciplinary proceedings otherwise comport with due process.  The hearing officer had some basis for finding that Stanko committed offenses, and the ensuing sanction, including the loss of good time credit, was reasonable.  This Court accordingly recommends that Stanko's petition for a writ of habeas corpus be denied.

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1.      Stanko's petition for a writ of habeas corpus (Doc. No. 1) be **DENIED.**

2.      This litigation be dismissed in its entirety and judgment entered.

Dated this 12th day of March, 2009.                    /s      *Jeanne J. Graham*

                                                                 JEANNE J. GRAHAM
                                                                 United States Magistrate Judge

### NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **March 26, 2009**.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The district court judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit.

### APPENDIX

Exh. 1          Report of T. Wilson, Mar. 4, 2008 (Decl. of A. Buege, Exh. B) [Doc. No. 5].

Exh. 2          Decl. of A. Buege, July 9, 2008 [Doc. No. 5].

Exh. 3          Kite of R. Stanko, Mar. 8, 2008 (Decl. of A. Buege, Exh. D) [Doc. No. 5].

Exh. 4          Report of C. Crawford, Mar. 24, 2008 (Decl. of A. Buege, Exh. F) [Doc. No. 5].

Exh. 5          Response of H. Watts, July 24, 2008 (Aff. of R. Stanko (unsworn), Aug. 8, 2008, Exh. A) [Doc. No. 8].

Exh. 6         Bureau of Prisons Program Statement 5270.70 (1994).

Exh. 7         Notice ("Notice of Discipline Hearing"), Mar. 6, 2008 (Decl. of A. Buege, Exh. C) [Doc. No. 5].

Exh. 8         Amended Report of C. Crawford, May 29, 2008 (Decl. of A. Buege, Exh. H) [Doc. No. 5].

Exh. 9         E-Mail of C. Crawford, Mar. 18, 2008 (Decl. of A. Buege, Exh. G) [Doc. No. 5].